This is 4-13-0526, People's State of Illinois v. Andrew Urdiales. Let's see, Attorney Hoffman's here on behalf of the appellant, Attorney Gorsh is here on behalf of the appellee. Mr. Hoffman, are you ready to proceed? I am, Your Honor. All right, let me do so. I need you to close. Sure. My name is Charles Hoffman. I represent the appellant, Andrew Urdiales, in this post-conviction appeal. We've raised three issues. Today, I plan to limit my remarks to the first issue, which is whether there should have been an evidentiary hearing on appellate counsel's ineffective assistance for failing to argue that Mr. Urdiales' jury waiver was invalid. I'll try to answer any questions the court may have on this or any of the other issues. In this case, Mr. Urdiales was charged with first-degree murder, and he faced the death penalty. When he waived his right to a jury trial, he was told by the trial judge that at his bench trial, he could be found not guilty, not guilty by reason of insanity, guilty but mentally ill, or guilty. But under the unusual procedure that was held in the trial court in this case, actually the only possible verdict at the conclusion of his bench trial was guilty. Counsel, I have a question. Sure. Help me out with the sequence here. Is it correct that when the court gave that admonishment, the court was not aware at that time that your client was going to go ahead and go forward with the waiver of—I'm trying to remember, I'm sorry. I've lost my train of thought here. There were a series of admonishments. Right. And these admonishments that we're complaining about were the last in the series. Okay. So that was when the decision had been made that there was going to be a combined hearing. Plea and the waiver. Plea and the waiver, that's correct. And the bench trial, basically. And what happened was he had thought about pleading guilty, and then the defense changed to let's try a plea of guilty but mentally ill, but with a jury trial and a jury sentencing. But these last admonishments we're talking about were just before the combined hearing began. Okay. And now the state argues that a possible outcome of the bench trial was not guilty by reason of insanity. We disagree, but even if that's true, the state makes no argument in this case that a verdict of guilty but mentally ill was possible after the bench trial or that a not guilty verdict was possible after the bench trial. When a defendant in a criminal case, especially a murder case, especially a capital case, waives his right to a trial by jury, he or she has to be accurately admonished by the trial court about the consequences because an erroneous admonishment can vitiate the knowing and intelligent nature of the waiver. And we've cited the Dameron case and the Brown case. And accurate admonishments were especially important in this case, and here's why. The goal of the defense here was to get a verdict of guilty but mentally ill, and I'm assuming that was because they thought that would be mitigation to avoid the death penalty when they got to the penalty phase. There are two ways to get a finding of guilty but mentally ill. Tender a plea or raise an insanity defense at trial and then tender a jury instruction on guilty but mentally ill. So in keeping with that strategy, Ernie Ellis tendered a plea of guilty but mentally ill. And that required a hearing because a defendant just can't simply plead guilty but mentally ill. There has to be a factual basis. The judge has to make a finding. Well, and the state was opposed to it, right? I mean, to the finding. Oh, absolutely. The state was opposed. So there was going to be a hearing. And the parties decided, we're calling a bunch of mental health witnesses. Let's just have them all testify all at once. Let's do a combined hearing where the judge hears the evidence of Ernie Ellis' mental illness or insanity. The judge decides at the conclusion of the presentation of the evidence whether or not to accept the plea of guilty but mentally ill. And if the judge rejects it, then the judge puts on his hat as the finder of fact at the bench trial and considers the evidence in that context. Well, for purposes of this combined hearing, the parties explicitly stipulated to all the elements of the first degree murder charge except for the defendant's mental state. So before accepting Ernie Ellis' jury waiver, the judge told him, if I reject the plea of guilty but mentally ill, the possible verdicts at your bench trial are not guilty, not guilty by reason of insanity, guilty but mentally ill, or guilty. Those admonishments were inaccurate and they were misleading and they misstated what could happen. Once the judge rejected the tender guilty but mentally ill plea, he couldn't find Ernie Ellis guilty but mentally ill at the bench trial because it's exactly the same standard. Once the judge rejected the plea of guilty but mentally ill, he couldn't find Ernie Ellis not guilty at the bench trial because the parties, as I said, had already stipulated to all the elements of the murder charge. Here's what the judge should have told Ernie Ellis, whose goal in this case was to get a verdict of guilty but mentally ill. The judge should have said, if I reject the guilty but mentally ill plea, I can't find you guilty but mentally ill at a bench trial, but a jury could find you guilty but mentally ill at a jury trial. The judge should have told Ernie Ellis, if I reject your plea of guilty but mentally ill, I can't find you not guilty at a bench trial, but Mr. Ernie Ellis, the jury could find you not guilty at a jury trial. But the judge told Ernie Ellis exactly the opposite. As a result, the bad admonishments made Ernie Ellis' jury waiver unknowing and unintelligent. We rely on the Dameron case, on the Brown case. Like this case. In Dameron, the bad jury waiver admonishments undermined the defendant's strategic goal in that case. In Dameron, the defendant wanted a jury instruction that, like without parole, was the mandatory alternative to the death penalty. And he was told by the judge, well, you can't get that instruction at a jury sentencing hearing. So Mr. Dameron waived his right to a jury. In the Brown case, the defendant wanted to have a bench trial and a jury sentencing. And the judge said, well, you can't do that. You have to waive a jury for both. And so the defendant did so. And in both cases, the Illinois Supreme Court said those admonishments were bad. The defendant's jury waiver was unknowing and intelligent. It's exactly the same thing here. Mr. Ernie Ellis' goal was to get a guilty but mentally ill finding. The judge's admonishments subverted that goal because he was under the impression that if the judge rejected the guilty but mentally ill plea, he could still be found guilty but mentally ill at the bench trial. And that was a legal impossibility. Now, the state argues that in this post-conviction, we didn't provide an affidavit from Ernie Ellis stating that if he had been correctly admonished, he wouldn't have waived his right to a jury trial. But in the context of this case, we don't need any such affidavit, and here's why. The issue here is ineffective assistance of counsel on direct appeal. The question here is, if counsel had raised this issue on direct appeal, would it have won? If it would have won, counsel was ineffective for not raising it. If it would have lost, counsel was not ineffective for not raising it. Well, this is an on-the-record issue. We don't need an affidavit from Mr. Ernie Ellis. And although the state says we need an affidavit, they've cited no cases at all saying that where there are bad admonishments, a defendant has to say that he would have done the opposite. And we haven't found any such case either. And I would point out to this court, look at any jury waiver admonishment case like Dameron or Brown. There was no affidavit in Dameron. Look at any counsel waiver case under Rule 401. If a trial court doesn't give good 401 admonishments, the counsel waiver is invalid. Courts don't require a defendant to provide an affidavit saying, you know, if I had been correctly admonished, I wouldn't have waived my right to counsel. Look at Miranda cases. When Miranda warnings aren't given, there's no requirement that a defendant put in an affidavit that said, you know, if I had been given Miranda warnings, I never would have confessed. Where on the record admonishments are misstated, incorrect, invalid, that vitiates a counsel waiver, a jury waiver, a Miranda warning. And for that reason, we simply don't need an affidavit in this case. It's clear on this record that the judge misinformed Mr. Ernie Ellis about the consequences of his jury waiver. And for that reason, his jury waiver was simply not knowing and not intelligent. And for that reason, counsel on direct appeal should have raised this issue because this is a meritorious issue. Our position is it would have won on direct appeal, and for that reason, counsel did not provide effective assistance on direct appeal. If the court has no questions on this or any other issue, we thank the court for its time and we would ask that you reverse the ruling of the trial court dismissing Mr. Ernie Ellis' post-conviction petition and remand the case for an evidentiary hearing on the question of appellate counsel's ineffectiveness and on the other issues that have been raised in the case. Thank you. Thank you, Mr. Hoffman. Ms. Storch? Yes, Ms. Storch. Ms. Storch, I would like to address the people in this case. The trial court properly dismisses Mr. Ernie Ellis' post-conviction claim about his jury waiver because of the consequences of his contradiction by the record. My motto is that they have been slain. We have some witnesses that are known enough slaying the process here to settle the case in my office and couldn't figure out what was going on because we didn't receive that resolution. Midway through the petition, the jury had about eight jurors ready in front of the petition. We showed up in the morning and I was the first one to plead guilty because that's who served our bench and had some of the work and the trial counsel wanted an opportunity to speak to Mr. Ernie Ellis and the court said, Oh, no, you need to take a break and you need to talk to your counsel, your parents, and go back and take a break. So they took a day off and they came back the next morning and said they had prevailed upon Mr. Ernie Ellis to plead guilty because he was mentally ill and said he'd be on the line. So what we say is that we don't agree. We do not agree that he's mentally ill. We're going to have to have a hearing. But the way they did it, in the morning they admonished Mr. Ernie Ellis. It was the first admonishment. There were two or three separate steps. We are arguing about the second step. It was the first admonishment in disregard of the TBI claim and they intended to plead and send a jury waiver on a factual basis. So they didn't hear that he was mentally ill at that point. Instead, they went back and they picked the rest of the jury. They came to a mental illness hearing for another day and it was on that morning that the defense counsel came in and said, my opponent said, Hey, we're having these witnesses. We don't want to call them in now. For TBI, for business, and for sentencing. We repented of the sentencing. What if we don't track it? They'll get us where we want to be. They said, Counselor, explain your strategy. They said, We don't want the client to tend to reflect guilty. Everything goes non-jurisdictionally. All non-jurisdictionally. So what if that was the TBI claim? And if the court accepts the TBI claim, when they get to where they want to be, they can go to the federal jury and say, Uh-huh, the judge is found. My client is a mental adult. Counselor basically says, Let's do this together. Let's do a joint. We have to litigate NGRAs if any trials to get to TBI. We don't want to waste the jury's time. Counselor says, It's pretty clear that a client did this. We need to get to TBI. So the court then proceeded to do some survey out of the numbers that had been launched. Thoroughly and accurately, relating to the process that was being followed, this unique process. Explaining two things would be going on at once. The bench hearing on the mental illness, which is sort of the tail end of the TBI case. Then you have the bench trial on guilt and innocence. And, um, you can see it. Now, the petitioner argues that the court incorrectly admonished him. It was simply not the case. The court did not advise the petitioner that he could prevail on a TBI, um, on his insanity offense. He was rejected the TBI case. And we said that he would address the TBI case first because that would be dispositive in this unique proceeding. If he were to reject the petitioner's TBI plea, then the matter would go right to a bench trial rather than a jury trial on guilt, innocence, and insanity. And he would not have the right to present that resurrected right for a jury trial. This was an important point because initially, in the first set of admonishments, the parties agreed that he was rejected the TBI only, that if, in fact, the court rejected the TBI plea, the petitioner would be allowed to bite the apple, as they termed it. He would be allowed to have the support that if he rejected the TBI plea, he could have the jury trial on guilt, innocence, and insanity. We need to be told that the court did tell the petitioner that he could prevail on NGRI if he rejected the TBI plea. It's not incorrect. Technically, the petitioner's excuses and pretty technically, his intentions of mental illness were so strong that he seized the TBI ploy and pushed it so far as to prove that he wasn't, in fact, saying that the court could have done so. But certainly, the court wasn't advising the court about these possible outcomes because he hadn't heard, he just hadn't even heard any evidence of his mental illness. He couldn't be telling, he couldn't have been advising about the likelihood that he would be found NGRI in the case. And the same thing holds true with acquittal. The critical point to understand here is that yes, the factual basis was offered and accepted in respect to the initial set of TBI's and much. But that was separate from the factual basis that was offered for guilt, innocence, and insanity. So when the counsel proposed this dual-track procedure, counsel said, well, the way I see it, we could stipulate the factual basis. But he didn't do so right then. He said, midway through the hearing, after they heard several of the defense witnesses about mental illness, the court advised the parties that did not yet receive or take a judicial notice of a factual basis in respect to that gift set for guilt, innocence, and insanity part. They then offered the factual basis. And this is on page 3041 of the record, 200-plus pages after admonishment. So the counsel said that the court couldn't have been admonishing the petitioner about the practical outcomes because he didn't even have that factual basis. And the guilty verdict, in other words, was not a foregone conclusion at the time of the admonishment, unlike the petitioner's case, because the court hadn't even taken the factual basis for the guilt, innocence, and insanity. With regard to the post-conviction affidavit, we're not insisting that the petitioner need to file one of his decision statements. He did go ahead, and he did file two affidavit in support of his post-conviction claim. He raised up in his factual statement with respect to claims one and three, but with respect to this particular claim, he never alleged that he was misled. And that's definitely another point in support of our argument. The admonishments themselves are not misleading. In fact, they simply explain the unique process and the change in that process from the initial process counsel said, when he was sick, we're going to send her to be admonished, to the new process here, where they were going to do a practical decision. And a guilty verdict is not a foregone conclusion. Does the court have any other questions? I don't see any. I understand that the rest of the petitioner's petition has been affirmed by the Supreme Court. Thank you, counsel. Mr. Hoffman, any rebuttal? Briefly. I believe I just heard counsel say that it's not their position that we needed an affidavit on this issue. They were just pointing out that while we provided an affidavit on the other issues we didn't on this one, it would have been nice if we had. However, the other two issues are off-the-record issues. And in post-conviction proceedings, if you raise an off-the-record issue, you have to provide some evidence in support. And that's why we provided affidavits on the other two issues. But we didn't need an affidavit on this issue because it's on the record. And our position is not that the trial judge should have given odds on what the outcome of the bench trial would be or should have told Mr. Erdialis the likelihood of what the verdicts would be. We're arguing that the judge should have accurately told him what the possible verdicts would be. And counsel says, well, the judge was just explaining the procedure, not advising Mr. Erdialis of what the possible outcomes would be. But I point the court to page R2793, which is cited at page 16 and 17 in our brief, and I'm not going to read to the court because I know the court doesn't like that during oral arguments. But the first thing the judge says in admonishing Mr. Erdialis is, now as to the bench trial, there are a number of possibilities. Let's assume for a moment that I reject the guilty but mentally ill plea. And then I have to rule on a bench trial as to phase one. And then the judge goes on and says, I can find you not guilty. I can find you guilty but mentally ill. I can find you not guilty by reason of insanity. And I respectfully, I didn't hear the state when they came up here say that the judge at the bench trial could have found Mr. Erdialis guilty but mentally ill at the conclusion of the bench trial. And that's the crux of this issue. That was the goal of the defense. And counsel mentioned that the judge didn't think Mr. Erdialis should get two bites at the apple and perhaps this procedure would allow that. Actually, in fact, Mr. Erdialis was entitled to two bites at the apple on guilty but mentally ill. He could tender a plea, and if that was rejected, he could raise an insanity defense at trial, bench or jury. So actually what happened in this case is Mr. Erdialis was deprived, unknowingly, of his right to two bites at the apple on a guilty but mentally ill finding, which, again, was the goal in this case. And by being explicitly told by the trial judge that at the bench trial he could be found guilty but mentally ill, that rendered Mr. Erdialis' jury waiver unknowing and unintelligent. And we again would ask this court to remand this case for an evidentiary hearing on that issue. Separate and apart from whatever the result is here, would you suggest that the procedure that was followed was fraught with the possibility of confusion? Absolutely, Justice Knapp. And was this the defense's idea or the prosecution's idea? It's difficult to tell exactly from the record. I don't want to misstate it, but I believe that the prosecutor was the first one to mention the possibility of a combined hearing, but the defense certainly went along with it and so did the judge. And I think the judge recognized how this was fraught with problems. We didn't raise... We're not arguing that counsel's strategy was ineffective. And I think if the jury waiver admonishments had been correct, I think we would have raised ineffective assistance of counsel for going along with this proceeding, and here's why. The state argues that there's a possibility that the judge would have, at the bench trial, found Mr. Erdialis not guilty by reason of insanity because the evidence of his mental illness was so great that the judge would reject the guilty but mentally ill plea because he was insane. We argue that, theoretically, that's a possibility, obviously, but everything in this case indicated otherwise. So why would Mr. Erdialis waive his right to a jury trial before he knew whether the judge would reject guilty but mentally ill because he thought Erdialis wasn't mentally ill or he would reject the guilty but mentally ill because he thought Erdialis was insane? I mean, if I were the defendant and the judge said, I reject your guilty but mentally ill plea because I don't think you're mentally ill, do you want to venture a jury trial? I think I'd say, well, I think I'll take a jury trial, but if the judge said, I'm rejecting your plea of guilty but mentally ill because I think you're legally insane, do you want to venture a jury trial? Well, I think I might take a bench trial in that case. So Justice Connected made absolutely no sense to waive a jury before they knew why the judge would reject guilty but mentally ill. It certainly was fraught with confusion, and I think the only reason they did it was judicial economy, not calling these experts twice or three times. And while that's a valid reason in some circumstances to combine procedures, in this capital case, I don't think it made any sense. But we're not challenging the procedure because the admonishments were invalid, and that's a per se reversible error. And unlike ineffective assistance of counsel, we don't have to show prejudice on that issue. Okay, thank you, counsel. The court will be in recess until the next case. This matter under advisement.